**Robert ARMITAGE, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GURTLER CHEMICALS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 26, 2003.

Decided Feb. 11, 2004.

Robert B. Woomer, Pittsburgh, for petitioner.

Maureen Kowalski and Melody A. Cook, Pittsburgh, for respondent.

BEFORE: FRIEDMAN, Judge, COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Robert Armitage (Claimant) petitions for review of the June 9, 2003, order of the Workers' Compensation Appeal Board (WCAB), which affirmed the order of the workers' compensation judge (WCJ) to

deny Claimant's claim petition. We vacate and remand.

In May of 2001, Claimant filed a claim petition in which he alleged that he sustained a work-related injury on August 31, 1999, in the nature of plantar fasciitis.[1] (WCJ's Findings of Fact, Nos. 1, 7; R.R. at 1.) Gurtler Chemicals (Employer), through its insurer CNA, filed a timely answer denying the material allegations in the claim petition; CNA also filed a joinder petition, naming Zurich Insurance Company as an additional carrier.[2] Both insurance carriers asserted a statute of limitations defense. (R.R. at 4, 10.)

At a hearing on the claim petition, Claimant testified on his own behalf, and the WCJ found his testimony to be credible in part as follows. Claimant was employed by Employer from December 1989 through December 31, 2000, as a sales and service representative, selling chemicals to large laundries. As part of his duties, Claimant would visit customers, make sales and install and service the equipment. At times, this required Claimant to stand for extended periods of time. In September of 1994, Claimant was working on a start up or installation job, which required him to stand on concrete floors for an extended period of time for several days. Claimant began to develop pain in both heels, and he discussed this problem with his supervisor. (WCJ's Findings of Fact, No. 4.)

After the September 1994 installation job, Claimant continued to experience pain in both heels; Claimant was never pain free, and the pain worsened during periods of extended standing. (WCJ's Findings of Fact, No. 4.) Claimant first sought medical treatment in July of 1995 with James J. Rent, DPM, a podiatrist, who diagnosed Claimant with plantar fasciitis and prescribed orthotic devices for Claimant's shoes. Claimant's heel problems continued even after treating with Dr. Rent; in fact, the severe episodes came on more often and with less activity. (WCJ's Findings of Fact, No. 6.) In early 1999, Dr. Rent referred Claimant to Scott L. Baron, M.D.; Dr. Baron administered injections into Claimant's heels, but the shots were not effective. (WCJ's Findings of Fact, No. 4.)

Although Claimant informed Employer of Dr. Baron's recommendation that Claimant be restricted to light duty work with limited standing and walking in August of 1999, Claimant continued in his pre-injury position until January of 2000. At that point, Employer attempted to modify the job by reducing Claimant's hours; however, at times, Claimant still was required to work five days per week to service all customers on his route. In November of 2000, Claimant's supervisor informed him that Employer needed someone to work Claimant's territory on a full-time basis. When Claimant indicated he could not work full time because of the pain in his heels, Claimant's supervisor stated that Employer would no longer make modified duty available to Claimant after December 31, 2000. Consequently, Claimant remained in his modified position only until December 31, 2000; he has not returned to work with Employer since that date. (WCJ's Findings of Fact, No. 4.)

Claimant also offered the deposition testimony of Dr. Rent. Dr. Rent testified that when he first saw Claimant, on July 31, 1995, Claimant complained of bilateral heel

1. Plantar fasciitis is an inflammation of the ligament which attaches at the heel. (WCJ's Findings of Fact, No. 5; R.R. at 61.)

2. Zurich Insurance Company provided coverage for Employer from 1994 through January 1, 2000. (WCJ's Findings of Fact, No. 3; R.R. at 8.)

pain that had been ongoing for some time. Dr. Rent diagnosed Claimant with plantar fasciitis and prescribed Claimant anti-inflammatories and orthotics for his shoes. (WCJ's Findings of Fact, No. 5; R.R. at 60–63, 66, 69.) Dr. Rent testified that the cause of plantar fasciitis is generally unknown but that extended standing or walking on hard surfaces tends to aggravate the condition. (WCJ's Findings of Fact, No. 5; R.R. at 65, 66.) Dr. Rent opined that Claimant's condition, as early as July 1995, was work-related. (WCJ's Findings of Fact, No. 6; R.R. at 62, 64, 83.)

Dr. Rent further testified that he continued to see Claimant on an occasional basis through 1999 and that, during that period, Claimant's symptoms would wax and wane. (WCJ's Findings of Fact, No. 5; R.R. at 66–71.) After Dr. Rent referred Claimant to Dr. Baron, Dr. Rent saw Claimant only once, on August 15, 2001, because Claimant was still experiencing pain. (R.R. at 71.) Even though Dr. Rent acknowledged that Claimant's condition was severe at both Claimant's first and last visit, Dr. Rent testified that Claimant's activities with Employer, particularly the standing in one place and walking on hard surfaces, "increase[ ] the symptomology as a result of the [C]laimant's condition in both heels." (WCJ's Findings of Fact, No. 6.) Indeed, Dr. Rent testified that standing on hard surfaces for a long period of time, as Claimant did, would tend to "worsen or aggravate [Claimant's] condition ..." (R.R. at 88.)

Crediting Dr. Rent's testimony in part, the WCJ found that Claimant sustained a work-related injury in the nature of a plantar fasciitis in both heels. The WCJ further found that Claimant's date of injury was July of 1995, when Dr. Rent diagnosed Claimant's condition and advised Claimant that his injury was work-related. In so finding, the WCJ noted that Dr. Rent "never specifically opined that each day was a new aggravation of the underlying condition" and that despite the waxing and waning of Claimant's symptoms, Dr. Rent characterized Claimant's condition as severe when he first saw Claimant and severe when he last saw Claimant. Based on these observations, the WCJ rejected Dr. Rent's testimony to the extent that it could be construed as establishing a repetitive *daily* aggravation of Claimant's condition. (WCJ's Findings of Fact, No. 6.) Because Claimant's work-related injury occurred no later than July of 1995, and because Claimant filed his claim petition in May of 2001, more than three years after this date of injury, the WCJ denied Claimant's claim petition as untimely pursuant to Section 315 of the Workers' Compensation Act (Act).[3]

---

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 602. That section provides, in pertinent part:

In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof.... The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.

77 P.S. § 602 (emphasis added). This court has held that section 315 is a statute of repose and not a statute of limitations. *Berisford v. Workmen's Compensation Appeal Board (Jessop Steel Co.)*, 142 Pa.Cmwlth.83, 596 A.2d 1237 (1991). Additionally, this court has repeatedly held that it is the date of injury and not the date of disability that is the determining factor when deciding the issue of timeliness under section 315. *Brooks v. Workmen's Compensation Appeal Board (Anchor Glass Container)*, 155 Pa.Cmwlth.248, 624 A.2d 821, *appeal denied*, 536 Pa. 631, 637 A.2d 291 (1993); *Berisford*; *McDevitt v. Workmen's Compensation Appeal Board (Ron Davison Chevrolet)*, 106 Pa.Cmwlth.207, 525 A.2d 1252 (1987), *appeal dismissed*, 520 Pa. 119, 552

Claimant appealed to the WCAB, which affirmed. Claimant now petitions this court for review of the WCAB's order.[4]

■ Claimant argues that the WCJ erred when he concluded that Claimant's work-related injury occurred in July of 1995 and, consequently, incorrectly determined that section 315 of the Act barred Claimant's claim petition. In making this argument, Claimant relies on undisputed evidence that he was not placed on a part-time status as a result of his work injury until November of 1999. Maintaining that this undisputed evidence establishes that his job duties aggravated his condition, Claimant asserts that his date of injury should be November 4, 1999.[5] Claimant argues that, because he filed his claim petition within three years from this injury date, his claim was timely. Claimant presents a valid point.

■ In rejecting Claimant's "aggravation theory," the WCJ specifically found that Claimant did not establish a *daily* aggravation. Although the WCJ did not err in finding that Claimant failed to es-tablish that a new aggravation occurred each day he worked, we disagree with the WCJ's determination that this failure necessarily time barred Claimant's claim. Merely because an aggravation, i.e., a new injury, does not occur *daily*[6] does not mean that there has not been such an aggravation at some time. *Cf. SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls)*, 728 A.2d 385 (Pa.Cmwlth.) (stating that a work-related aggravation constitutes a new work-related injury and, thus, a separately compensable injury), *appeal denied*, 561 Pa. 663, 747 A.2d 903 (1999). However, by denying Claimant's claim petition solely on the ground that Claimant did not establish a *daily* aggravation, the WCJ overlooked the possibility that Claimant's job duties caused him to suffer an aggravation of his condition at some point in time. Indeed, the WCJ ignored testimony from Dr. Rent that would support such a finding, and, in fact, the WCJ ignored his own findings of fact which, in effect, acknowledge that Claimant's condition was aggravated by his job duties.[7] Instead, the WCJ only addressed,

A.2d 1048 (1989). Consequently, in deciding whether Claimant's claim petition was timely filed, his date of injury is determinative.

4. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law (Law), 2 Pa.C.S. § 704. Claimant maintains that because he did not prevail before the WCJ despite being the only party to present evidence, this court must determine whether the WCJ committed an error of law or capriciously disregarded competent evidence. "Review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 202, 812 A.2d 478, 487 (2002). Capricious disregard is

found when the fact-finder ignores relevant, competent evidence. *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503 (Pa.Cmwlth. 1998).

5. We note the discrepancy between this date and Findings of Fact, No. 4, stating that Claimant did not assume part-time status until January of 2000. Additionally, we note that in his claim petition, Claimant identified August 31, 1999, as his injury date.

6. *See USAir, Inc. v. Workmen's Compensation Appeal Board (Schwarz)*, 160 Pa.Cmwlth.100, 634 A.2d 714 (1993) (discussing daily aggravation).

7. Specifically, although Dr. Rent characterized Claimant's condition as continually severe, the WCJ found that Claimant's job duties with Employer increased Claimant's symptomology and that, over time, Claimant's

and then rejected, testimony supporting a *daily* aggravation. Consequently, we must vacate and remand this matter to the WCAB to remand to the WCJ for findings of fact and conclusions of law which fully address this alternate, non-daily, aggravation theory.

### ORDER

AND NOW, this 11th day of February, 2004, the order of the Workers' Compensation Appeal Board (WCAB), dated June 9, 2003, is hereby vacated, and we remand this matter to the WCAB to remand to the Workers' Compensation Judge for findings of fact and conclusions of law in accordance with the foregoing opinion.

Jurisdiction relinquished.

### DISSENTING OPINION BY Judge COHN.

The majority's decision to remand this case to the WCJ to consider whether Claimant suffered a "non-daily aggravation" is unnecessary. This is because, in addition to making a finding that Claimant presented no credible evidence of such an injury, the WCJ also found that Dr. Rent, during his course of treatment of Claimant "did not actually notice any real worsening of the condition." (Adjudication at p. 4.) This is supported by Dr. Rent's September 18, 2001 deposition, wherein he stated on direct examination that he could not say that Claimant's condition had gotten worse, but only that it persisted, (N.T. 15–16), his admission on cross examination that in his January 2001 Physician's Certi-

fication he had *not* indicated that Claimant's condition worsened or became aggravated and, his admission on re-cross that, as of August 2001, Claimant had had no change in symptoms. (N.T. 44, 47.) This testimony clearly supports the finding that there was no aggravation of the work-related injury, daily *or otherwise*. Thus, I would affirm the Workers' Compensation Appeal Board's order.

---

severe episodes came on more often and with less activity. These findings, which are supported by substantial evidence, suggest that Claimant's job duties aggravated his condition, thereby constituting a new injury. However, because the WCJ's findings are incomplete, we cannot determine whether Claimant's claim petition was timely. The findings do not address whether Claimant's

work was the cause of the increased frequency and duration of Claimant's symptoms or, if so, whether that constitutes an aggravation of Claimant's condition, i.e., a new injury. Additionally, to be complete, the WCJ also would have to determine the date of any new injury. If that date is within three years of the filing of the claim petition, Claimant's claim is not time barred.