Ronald K. LEWIS, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (Andy Frain Services, Inc.), Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 5, 2011.

Decided Sept. 22, 2011.

Reargument Denied Nov. 10, 2011.

Joseph F. Rodkey, Jr., Oakmont, for petitioner.

Robert John Pasquarelli, Pittsburgh, for respondent Andy Frain Services, Inc.

BEFORE: LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge BROBSON.

Petitioner Ronald K. Lewis (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board), dated July 2, 2010. The Board affirmed the decision and order of a Workers' Compensation Judge (WCJ), denying Claimant's claim petition. The WCJ concluded that Claimant was not entitled to benefits because (a) he did not meet his burden to prove that he was within the scope of his employment at the time of the injury and (b) he violated a positive work order. For the reasons that follow, we affirm the Board.

We begin by reciting what appear to be undisputed and relevant facts for purposes of reviewing the issues on appeal.[1] In June 2007, Oakmont Country Club (Oakmont), in Oakmont, Pennsylvania, hosted the annual United States Golf Association event known as the United States (U.S.) Open. Andy Frain Services, Inc. (Employer) provided services at the U.S. Open at Oakmont. Employer hired Claimant to work at the U.S. Open. Claimant showed up for work at the U.S. Open on June 9, 2007. His assigned job duty that day was to watch an open tent with a Lexus vehicle on display (Lexus Tent). His shift was 7:00 p.m. (June 9, 2007) to 7:00 a.m. (June 10, 2007). Claimant testified that during his shift, at approximately 6:00 a.m., he heard sounds and saw lights. Approximately forty (40) minutes later, before his shift ended, he decided to check the surrounding areas where he previously had seen the lights and heard the noises. He left the Lexus Tent. While away from the Lexus Tent, but still on the Oakmont grounds and before his shift ended, Claimant was injured.

On July 23, 2007, Employer issued a Notice of Compensation Denial (NCD). In the NCD, Employer indicated (by a check mark) the following reason for denial: "The employee was not employed by the defendant." (Reproduced Record (R.R.) at 37a.) On December 13, 2007, Claimant filed a claim petition, seeking temporary total disability benefits and payment of related medical expenses against Employer, alleging that he sustained work-related head and back injuries while in the course of his employment with Employer on June 10, 2007. In its answer to the claim petition, in addition to claiming that Claimant was not an employee at the time of his injury, Employer also raised the affirmative defense that Claimant's injuries were not compensable because Claimant was outside the course of his employment when he was injured. (*Id.* at 39a.)

With the agreement of the parties, the WCJ bifurcated the proceedings. The only issue decided by the WCJ, affirmed by the Board, and now on review by this Court is the question of whether Claimant was in the course of his employment at the time of his injury. The WCJ held a hearing on this question over five (5) days.

The conflicting evidence at the hearing focused primarily on the questions of where on the Oakmont grounds Claimant was injured and how Claimant was injured in the early morning of June 10, 2007. The parties also presented conflicting evidence about Claimant's job title and responsibilities. Claimant testified that he was hired as a security guard, and Employer's witnesses testified that Claimant

---

1. We discern these undisputed facts from the Board's July 2, 2010 Order, the WCJ's decision, and the certified record. We are especially cognizant of the WCJ's findings of fact that Claimant does not challenge on appeal.

was hired as an event ambassador, a job which requires him to remain in the Lexus Tent unless relieved by Employer or Lexus personnel. The WCJ summarized the witnesses testimony in Findings of Fact numbers 1 through 6, which Claimant does not challenge on appeal. In Finding of Fact number 7, the WCJ found (or concluded) that Claimant did not meet his burden of proof. Finding of Fact number 7 provides:

7. Based upon a review of the foregoing, as well as all evidence of record, I find that the claimant has not met his burden of proof in the Claim Petition.

 a. I find the testimony of employer's witnesses to be more credible than the testimony of the claimant.

 b. The claimant's testimony rambled and was inconsistent, and confusing. At the first hearing he could not identify whether he had fallen on bleachers to the right or left of the Lexus tent. At the final hearing, he stated that he fell off the Grandstand.

 c. On the first time he testified he stated that he did not know where he fell or where he was found. Despite a ten day admission to the hospital he would not admit that he was treated for alcohol withdrawal.

 d. I do not accept his testimony regarding his job duties as an event ambassador. I accept the employer's witnesses' description as the most credible. I accept the testimony of Ben Johnson, David Clayton, Scott Dennison and John Storer as the most credible. I do not find claimant credible that he was hired as a security guard. He was hired as an event ambassador and his job was to sit in the Lexus tent and watch the car. I find the employer's testimony credible that the claimant was provided a security radio. I accept their testimony that the claimant was directed to use the radio if he needed a break or if there was some type of problem.

 e. I find the testimony of the employer's witnesses as credible that the claimant contacted them using the security radio.

 f. I find that the claimant abandoned his position when he left his station.

 g. I find that the claimant was not in any way following the directions of his employer and was in violation of a positive work order when he left his work station and began wandering around the premises. His activities were not furthering the interests of his employer.

 h. I accept the employer's testimony that the bleachers or any other structure were not in the area of the Lexus tent.

(R.R. at 401a.) Based on these findings, the WCJ concluded that Claimant did not meet his burden to prove that he was in the scope of his employment when he fell on June 10, 2007. The WCJ also concluded that Claimant violated a positive work order and abandoned his position.

By order dated July 2, 2010, the Board affirmed the WCJ's decision, concluding that Claimant failed to prove that his injury arose in the course of employment. (R.R. at 460a.) The Board reasoned that with the WCJ's rejection of Claimant's testimony as not credible, Claimant failed to carry his burden of proof as a matter of law. (*Id.*) Claimant filed the subject petition for review with this Court.

 On appeal,[2] Claimant argues that the WCJ erred in concluding that he was

2. Our standard of review in a workers' com- pensation appeal is limited to determining

outside the course of his employment at the time of his injury. Specifically, Claimant contends that both the WCJ and the Board erred when they dismissed Claimant's claim petition by concluding that a *per se* violation of a work rule mandates forfeiture of benefits pursuant to Section 301(c)(1) of the Workers' Compensation Act (Act)[3]. Claimant argues that the WCJ's and the Board's analysis of this issue is either in error or is incomplete, citing *Dickey v. Pittsburgh and Lake Erie R.R. Co.*, 297 Pa. 172, 146 A. 543 (1929), and its progeny. Claimant further challenges the WCJ's Findings of Fact numbers 7(b)-(d), which the Court construes as findings supporting the WCJ's decision to reject Claimant's testimony as not credible. Claimant argues that these findings are not supported by substantial evidence, capriciously disregard uncontroverted evidence, and/or reveal bias on the part of the WCJ in favor of Employer. Claimant also challenges Finding of Fact number 7(h), arguing that it too lacks substantial evidentiary support and is the result of the WCJ's capricious disregard of evidence.

■■■ To begin our analysis, we first consider whether the WCJ's Findings of

Fact 7(b)-(d) and 7(h) are supported by substantial evidence. The WCJ is the ultimate fact finder in workers' compensation cases, and we are bound by the WCJ's findings of fact if they are supported by substantial evidence. *General Electric Co. v. Workmen's Comp. Appeal Bd. (Valsamaki)*, 140 Pa.Cmwlth. 461, 593 A.2d 921, 924, *appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991). It does not matter that there is evidence of record which could support a finding contrary to that made by the WCJ, the only inquiry is whether there is evidence of record which supports the WCJ's finding. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Products Inc.)*, 721 A.2d 1152, 1155 (Pa.Cmwlth.1998). The WCJ, however, cannot capriciously disregard competent, relevant evidence, and "capricious disregard is found when the factfinder ignores relevant, competent evidence." *Armitage v. Workers' Comp. Appeal Bd. (Gurtler Chem.)*, 842 A.2d 516, 519 n. 4 (Pa.Cmwlth.2004).

■■ In Findings of Fact 7(b)-(c), the WCJ found Claimant's testimony to be rambling, inconsistent, and confusing, noting that at the first hearing Claimant could not identify where he fell or where he was

---

whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. We acknowledge our Supreme Court's decision in *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), wherein the Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Wintermyer*, 571 Pa. at 203, 812 A.2d at 487.

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1). Section 301(c)(1) of the Act, provides, in pertinent part:

The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe ... *arising in the course of his employment and related thereto ... shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer*, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

(Emphasis added.)

found. Having thoroughly reviewed the testimony in this case, we must agree with the WCJ's characterization of Claimant's testimony, specifically noting Claimant's inability to communicate in a coherent manner the location where he became injured or where he was found.

During the first day of the hearing on January 22, 2008, Claimant testified that around 6:40 a.m., he left the Lexus Tent and walked toward a grandstand, sometimes referred to by the parties throughout the proceedings as bleachers, to get a better look around the area, when something let loose underneath him, causing him to fall. (R.R. at 18a.) During the hearing on April 22, 2008, Claimant similarly testified that at about 6:45 a.m., he decided to investigate the area around the Lexus Tent because he had heard some noises earlier in the morning. (R.R. at 51a.) When he was questioned as to the location of the bleachers, he was unable to approximate the distance between the Lexus Tent and the grandstands or bleachers. At best, he described the bleachers as possibly being as little as twenty feet out of his way but less than one hundred yards from the Lexus Tent. (R.R. at 51a–54a). During a later point in that hearing, Claimant was unable to approximate the distance or direction he was walking when he came upon the bleachers in question, other than to say that "they were in the vicinity of the [Lexus T]ent." (R.R. at 54a–60a). Claimant was unable to state whether the bleachers were in the direction of the golf course or front gate, and he seemed to describe an inability to walk a "direct path" due to "obstacles" being in his way, although it was in a "line between [him] and leaving for the end of the day." (R.R. at 54a–55a.) He could

not identify on which side of the Lexus Tent the bleachers were located. (R.R. at 61a.)

Claimant testified that after he fell, he walked around in search of help because he was bleeding and in pain. (R.R. at 61a–67a.) He did not know where he walked or for how long he walked, but he does not believe that he went far or walked for long.[4] (Id.)

Following the conclusion of the testimony of Employer's witnesses, Claimant testified again during the hearing on November 20, 2008, at which time he identified a structure, referred to by him as "grandstands" and by Employer as "corporate tents," as the structure that he was on when he fell. (R.R. at 355a–62a.) He explained that he was now able to discern the location of his fall because he and his attorney went back to the site with a map, a copy of which previously was entered into the record. (Id.) The Court notes that what it believes to be the "corporate tents" are not in the direction of where Claimant would have exited at the end of the day, as they were located along hole number 3 of the golf course. The "corporate tents" are on the opposite side of the Lexus Tent from where Claimant was found.

As noted above, a review of the testimony reveals support for the WCJ's observation that Claimant's testimony rambled, was inconsistent, and is confusing. While this Court clearly recognizes that we do not sit in the capacity as fact finder in this matter, we are also cognizant of the fact that were we to sit in such a capacity we would be unable to discern the location of Claimant's fall based upon Claimant's testimony. Moreover, specula-

4. Employer's witness testified that Claimant was found near the bus loop headed in the direction of where he was to report when his shift was over. (R.R. at 149a–150a.) Employer's witness presumed that Claimant had left through the main entrance. (Id.)

tion as to Claimant's location at the time of his injury is further clouded by the testimony of Employer's witnesses and the map of the event. Under these circumstances, we must conclude that the WCJ's Findings of Fact numbers 7(b)-(c), as to the lack of clarity of Claimant's testimony, Claimant's changing testimony as to the location of the bleachers or grandstands in question, and his inability to identify where he fell or was found, are supported by substantial evidence of record.[5]

Also, in Finding of Fact number 7(d), the WCJ found the testimony of Employer's witnesses to be more credible than that of Claimant regarding Claimant's job duties. The WCJ found that Claimant "was hired as an event ambassador and his job was to sit in the Lexus tent and watch the car." (R.R. at 401a.) The WCJ also found that Claimant was provided a security radio and "was directed to use the radio if he needed a break or if there was some type of problem." (*Id.*)

Claimant testified that he was hired as a security guard, and his job was to make sure that the Lexus vehicle inside the tent *and its surroundings* were secured. (R.R. at 68a–74a.) He disputed that his job was to sit in the Lexus Tent and contact someone by using a security radio if he felt that the Lexus vehicle was in danger of being harmed or if an unauthorized person entered the Lexus Tent. (*Id.*) Claimant also testified that he was never informed that he was not supposed leave the Lexus Tent, and he was not issued a security radio. (*Id.*) Employer's witnesses testified to the contrary.

First, David Clayton, the owner of Andy Frain Services, Inc., testified that Claimant was hired as an event ambassador, which position he described as a "stationary" position with "observe and report" responsibilities, meaning that event ambassadors are to report any incidents so that licensed security personnel or law enforcement could respond. (R.R. at 123a–27a.) Event ambassadors are issued credentials and security radios. (*Id.*)

Second, Scott Dennison, Employer's Managing Director of Special Events, testified that he is in charge of hiring and training employees for special events. (R.R. at 176a–78a.) He testified that the event ambassador position traditionally is a non-security position, which may involve checking credentials or controlling interior access inside the perimeter of the facility. (R.R. at 179a–80a.) Generally, the event ambassador position is an interior fixed-post location, responsible for a specific area, not to be out patrolling the grounds. (R.R. at 180a.) Mr. Dennison testified

---

5. In Finding of Fact number 7(c), the WCJ also notes that despite a ten-day hospital admission, Claimant would not admit that he was treated for alcohol withdrawal. (R.R. at 401a.) Substantial evidence exists of record to support the WCJ's finding that Claimant would not admit to being treated for alcohol withdrawal. Claimant testified that he was aware that his hospital records indicated that he informed hospital personnel that he had been drinking the night of his injury and that he consumed alcohol on a daily basis. (R.R. at 87a–89a.) When questioned, Claimant could not testify to any treatment that he received for alcohol withdrawal or his low back during his ten-day admission. (*Id.*) He denied drinking on the evening in question and denied having a history of daily alcohol use; instead, he testified that the history contained in the hospital records is incorrect. (*Id.*) In addition to arguing that substantial evidence does not exist to support the above finding, Claimant also argues that the WCJ's finding demonstrates undue prejudice that improperly tainted the WCJ's determinations. We disagree that the finding demonstrates prejudice. Instead, this finding, which is based upon substantial evidence, appears to be one of several findings describing various factors that caused the WCJ to discredit Claimant's testimony.

that Employer hired Claimant as an event ambassador, and Mr. Dennison conducted the training himself. (R.R. at 183a–85a.) Mr. Dennison and Ben Johnson, Employer's Night Security Manager, informed Claimant that his post was inside the Lexus Tent, he was to remain there during his shift, and he was to report any unusual activity. (R.R. at 188a–89a.) Claimant was to check the credentials of anyone who wanted to enter the Lexus Tent. (*Id.*) Claimant was informed that if he needed a break or lunch, he should call the overnight supervisor on the radio and someone would provide the necessary relief for that post. (*Id.*) Mr. Dennison disagreed that Claimant was instructed to patrol the surrounding area and report any suspicious activity. (R.R. at 191a.) In fact, Mr. Dennison testified that such conduct "would be a detriment" because then there would be "nobody [inside the Lexus Tent] to ensure that the proper coverage is taking place at that particular facility," as Claimant was not supposed to leave the Lexus Tent before 7:00 a.m. for any reason (unless relieved by another person). (R.R. at 191a, 204a.) Mr. Dennison also confirmed that he gave Claimant a security radio the first night he worked at the Lexus Tent, (R.R. at 199a–201a), and that after Claimant left in an ambulance, Mr. Dennison found Claimant's security radio on a chair in the Lexus Tent (R.R. at 210a–11a).

Benjamin Johnson, Employer's Night Supervisor for the U.S. Open, also testified. He confirmed that Claimant was hired as an event ambassador, which he described as a non-security position. (R.R. at 256a–57a.) He testified that the job duties of an event ambassador assigned to the Lexus Tent were to stay in the tent, observe anybody coming into the tent, see if they had proper credentials or documentation, and make sure that no one disrupted the brochures or got into the car itself. (R.R. at 257a.) He testified that all event ambassadors working the night shift were issued a radio. (R.R. at 258a.) Event ambassadors attended a training class, which explained their job duties, including operation of the radios. (*Id.*) Event ambassadors were to use their radios in event of an emergency or to notify supervisory personnel or the command center and to request a break or additional equipment, such as a jacket or flashlight. (R.R. at 258a–59a.) He explained that every night beginning at 9:00 p.m., Employer would perform radio checks periodically to every post position to verify that the radios were working and so that Employer would know that the ambassadors were awake and performing their jobs. (*Id.*)

Mr. Johnson further testified that he and Mr. Dennison accompanied Claimant to the Lexus Tent on the first evening that Claimant worked, and they made it clear to Claimant that his only job was to remain in the tent and he was not to leave the tent because Employer had other security officers in the surrounding areas. (R.R. at 260a–64a.) Mr. Johnson testified that it would be detrimental to Employer if Claimant left the tent because Employer was contracted to supply an event ambassador 24 hours a day to be in the Lexus Tent. (R.R. at 264a.)

Mr. Johnson also testified that during the shift at issue, he had radio contact with Mr. Lewis. (R.R. at 270a–71a.) In fact, in addition to the contact during the periodic radio checks, Claimant radioed two times during the shift to report noises and lights. (R.R. at 271a–73a.)

Finally, John Storer, Employer's Director of Operations for Special Events, provided similar testimony regarding the duties of an event ambassador. (R.R. at 303a–10a). He was present when Claimant was trained, and he was the first one

to respond to Claimant after he was injured.[6] (R.R. at 310a.)

We reiterate that credibility determinations are within the exclusive province of the WCJ, *City of Philadelphia v. Workers' Compensation Appeal Board (Reed)*, 785 A.2d 1065, 1068 (Pa.Cmwlth.2001), *appeal denied*, 573 Pa. 668, 820 A.2d 706 (2003), and the only inquiry is whether there is evidence of record which supports the WCJ's finding, *Hoffmaster*, 721 A.2d at 1155. "[I]t does not matter that there is evidence of record which could support a finding contrary to that made by the WCJ." *Hoffmaster*, 721 A.2d at 1155. Here, the WCJ found the testimony of Employer's witnesses to be more credible than the testimony of Claimant. Having accepted the testimony of Employer's witnesses as credible, the testimony summarized above provides ample support for the WCJ's findings that Claimant was hired as an event ambassador to "sit in the Lexus [T]ent and watch the car" and that he was issued a radio and instructed "to use the radio if he needed a break or if there was some type of problem." (R.R. at 401 a.) We must conclude, therefore, that Finding of Fact number 7(d) is supported by substantial evidence of record.

In Finding of Fact number 7(h), which Claimant also challenges for lack of substantial evidence, the WCJ accepted the testimony of Employer's witnesses and found that "the bleachers or any other structure were not in the area of the Lexus [T]ent." (*Id.*) In addition to Claimant's testimony described above regarding the location of the bleachers on which he allegedly fell, Employer's witnesses testified as to the location of bleachers. Mr. Clayton testified that the closest bleachers to the Lexus Tent were five hundred or six hundred feet away on the other side of a fence near the number two green; there were "absolutely no bleachers in the vicinity of the Lexus [T]ent." (R.R. at 135a–36a, 142a–46a.) When he heard that a person was injured on the bleachers, he assumed that it was not one of Employer's employees because they would have no reason to be around the bleachers. (R.R. at 137a.) Mr. Dennison testified that there are no bleachers in the area from the Lexus Tent through the main entrance and back to the point where Claimant was found. (R.R. at 206a.) He, too, testified that the closest bleachers were near the number two green on the other side of a fence. (R.R. at 206a–08a.) Mr. Johnson testified that the nearest bleachers were at the second tee, roughly 50 to 70 yards away. (R.R. at 266a–67a.) No bleachers were located in the general area of the Lexus Tent or between the Lexus Tent and the check-out tent. (R.R. at 270a, 296a.) On cross-examination, Mr. Johnson acknowledged the existence of a number of grandstands along the fence, bordering holes two and three, although it is unclear from his testimony as to on which side of the fence these grandstands were located. (R.R. at 296a–98a.) Finally, Mr. Storer testified that there were no bleachers in the area of the Lexus Tent, and that the closest bleachers would have been near the second tee on the other side of a fence. (R.R. at 313a–14a.) The bleachers were not "in close proximity to the village" where the Lexus tent was located. (*Id.*) Similarly, there were no bleachers near the route that one would take to go from the Lexus tent to the check-out tent. (R.R. at 316a).

---

6. Mr. Storer testified that on the morning of the incident, he received a report that one of Employer's employees was bleeding and walking around near the corporate gate, so he went to check it out. (R.R. at 316a–19a.) He arrived around 7:00 to find Claimant bleeding from his head. (*Id.*) Claimant was unable to tell him what happened. (*Id.*)

Again, the WCJ found that "the bleachers or any other structure were not in the area of the Lexus [T]ent." (R.R. at 401a.) We note that the word "area" has a "subjective" connotation rather than an "objective" connotation, and it is defined, in part, as "any particular extent of space or surface" or "the range or extent covered by or included in some thing or concept." Webster's Third New International Dictionary 115 (1993). The Court, therefore, cannot simply look to the definition of "area" and draw a defined radius around the Lexus Tent to determine whether the bleachers or any other structure were within that "area." Instead, we must look to the context to determine if the WCJ's finding that "the bleachers or any other structure were not in the area of the Lexus [T]ent" was supported by substantial evidence. (R.R. at 401a.) Given that the WCJ found that Claimant's job was to "sit in the Lexus [T]ent and watch the car" and that he was issued a radio and instructed "to use the radio if he needed a break or if there was some type of problem," we cannot conclude that the WCJ erred or abused his discretion in finding that objects that were described as being five hundred to six hundred feet away or even fifty to one hundred yards away were "not in the area of the Lexus [T]ent." We, therefore, must conclude that Finding of Fact number 7(h) is supported by substan-

tial evidence of record based upon the testimony of Employer's witnesses and even some of Claimant's inconsistent testimony.[7]

▪▪▪ Having concluded that the challenged factual findings are supported by substantial evidence, we now consider whether the WCJ and Board erred in concluding that Claimant failed to sustain his burden of proof with respect to his claim petition because he did not prove that he was within the course of his employment at the time of the injury. In a claim petition, the claimant bears the burden of proving all elements necessary to support an award. *Innovative Spaces v. Workmen's Comp. Appeal Bd. (DeAngelis)*, 166 Pa.Cmwlth. 141, 646 A.2d 51, 54 (1994), *appeal denied*, 541 Pa. 645, 663 A.2d 696 (1995). An injury is compensable under Section 301(c)(1) of the Act only if the injury arises in the course of employment and is causally related to thereto. *Dep't of Labor and Indus. v. Workers' Comp. Appeal Bd. (Savani)*, 977 A.2d 585, 588 (Pa. Cmwlth.2009). An injury may be sustained "in the course of employment" under Section 301(c)(1) of the Act where the employee is injured on or off the employer's premises while actually engaged in furtherance of the employer's business or affairs.[8] *U.S. Airways v. Workers' Comp.*

---

7. Claimant argues that the WCJ, in finding that "the bleachers or any other structure were not in the area of the Lexus [T]ent," capriciously disregarded uncontroverted evidence in the form of to-scale maps, without explanation. We disagree. First, the WCJ admitted the to-scale maps into the record, (R.R. at 193a), and allowed testimony referring to the maps throughout the proceedings. Second, this Court's review of the maps reveals that the various structures to which witnesses referred, specifically the corporate tents and bleaches near the second hole, appear to be approximately 400 to 500 feet away from the Lexus Tent, respectfully. Under the analysis discussed above regarding the *area* of

the Lexus Tent, the to-scale maps in and of themselves constitute substantial evidence to support the WCJ's finding that "the bleachers or any other structure were not in the *area* of the Lexus [T]ent." (R.R. at 193a, 401a.)

8. An injury also may be sustained "in the course of employment" where the employee, although not actually engaged in the furtherance of the employer's business or affairs: (a) is on the premises occupied or under the control of the employer or upon which the employer's business or affairs are being carried on; (b) is required by the nature of his employment to be present on the employer's premises; and (c) sustains injuries caused by

*Appeal Bd. (Dixon)*, 764 A.2d 635, 640 (Pa.Cmwlth.2000), *appeal denied*, 567 Pa. 753, 788 A.2d 382 (2001). The operative phrase "actually engaged in the furtherance of the business or affairs of the employer," which is usually expressed as "in the course of employment," must be given a liberal construction. *Southeastern Pa. Transp. Auth. v. Workers' Comp. Appeal Bd. (McDowell)*, 730 A.2d 562, 564 (Pa. Cmwlth.1999). An activity that does not further the affairs of the employer will take the employee out of the course and scope of employment and serve as a basis for denial of the claim by the WCJ. *Pesta v. Workmen's Comp. Appeal Bd. (Wise Foods)*, 153 Pa.Cmwlth. 616, 621 A.2d 1221, 1222 (1993). Determining whether an employee is acting in the course of employment at the time of an injury is a question of law, which must be based on the findings of fact made by the WCJ. *Id.*

 Here, it is undisputed that Claimant was on Employer's premises at the time of his injury, and neither Claimant nor Employer argues that Claimant's injury was caused by the condition of the premises or by operation of Employer's business. To stay within the course of his employment, therefore, Claimant must prove that he was engaged in the furtherance of Employer's business or affairs. *U.S. Airways*, 764 A.2d at 640. To determine whether Claimant was actually engaged in the furtherance of Employer's business or affairs we must consider the nature of the employment and Claimant's conduct. As to the nature of Claimant's employment, the WCJ specifically found that Claimant "was hired as an event ambassador and his job was to sit in the Lexus Tent and watch the car." (R.R. at 401a). Furthermore, the WCJ found that

Claimant "was directed to use the radio if he needed a break or if there was some type of problem." (*Id.*) Instead, the WCJ found that Claimant left his work station and wandered around the premises. (*Id.*) In fact, the WCJ found that Claimant "abandoned his position." (*Id.*) Moreover, as Employer's witnesses testified that an event ambassador leaving his fixed-post would be detrimental to Employer, the WCJ found that Claimant's "activities were not furthering the interest of Employer." (*Id.*) Finally, the structure on which Claimant claims to have been ascending when he became injured is "not in the area of the Lexus [T]ent." (*Id.*) Based upon these findings of fact, the WCJ and Board did not err when they concluded that Claimant failed to prove that he was in course of his employment at the time of his injury.

 We need not consider whether Claimant violated a work rule and, if so, whether that violation justified forfeiture of benefits under *Dickey* and its progeny, because we may affirm the Board's order based upon the WCJ's and Board's independent conclusion that Claimant was not in the course of his employment at the time of his injury. Here, it is important to recognize that the WCJ provided two bases for denying Claimant's claim petition. First, the WCJ concluded that Claimant did not meet his burden to prove that he was within the scope of his employment at the time of his injury. (R.R. at 402a.) Second, the WCJ concluded that Claimant violated a positive work order, presumably justifying forfeiture of benefits pursuant to *Dickey*, although *Dickey* and its resulting forfeiture rule are not referenced by the WCJ. (*Id.*) On appeal, the Board concluded that "[w]ith the rejection of his testimony

---

the condition of the premises or by operation of the employer's business or affairs thereon. *U.S. Airways*, 764 A.2d at 640. Here, Claim-

ant does not contend that he is entitled to benefits under the second analysis set forth in *U.S. Airways*.

as not credible, Claimant failed to carry his burden of proof as a matter of law[,] and the [WCJ] did not err by dismissing his [c]laim [p]etition." (R.R. at 472a.) The Board, therefore, affirmed the WCJ's order on the basis of the WCJ's first conclusion of law that Claimant failed to prove that he was in the course of his employment at the time of injury. The Board, in affirming, did not base its decision on the WCJ's second conclusion of law that Claimant violated a work rule. The determination that Claimant failed to prove that he was in the course of his employment at the time of his injury because he was not injured in the area of the Lexus Tent and not furthering the interest of Employer is sufficient in and of itself to deny benefits without consideration of *Dickey* and its progeny.[9] Our analysis may have been different if Claimant had been injured in the area of the Lexus Tent and the only purported reason for the WCJ's denial of benefits was the fact that Claimant violated a work rule when he failed to remain inside the tent. Such circumstances, however, are not before the Court in this case.

Accordingly, the order of the Board is affirmed.

9. An employer may raise the affirmative defense to a claim petition that the claimant's actions violated a positive work order and, as a result, his injuries were sustained outside the course of his employment. *Dickey*, 297 Pa. at 174–75, 146 A. at 544. Denying benefits based on the violation of a positive work order is a very rare exception to the broad general principle that all injuries sustained by an employee arising in the course of his employment and causally related thereto are compensable. *Camino v. Workers' Comp. Appeal Bd. (City Mission)*, 796 A.2d 412, 418 (Pa.Cmwlth.2002). When the affirmative defense is raised, the employer has the burden of proving that the claimant's actions were in violation of a positive work order. *Sysco Food Serv. v. Workers' Comp. Appeal Bd. (Sebastiano)*, 940 A.2d 1270, 1274 (Pa.Cmwlth.

*ORDER*

AND NOW, this 22nd day of September, 2011, the order of the Workers' Compensation Appeal Board, dated July 2, 2010, is hereby AFFIRMED.

2008). Pursuant to *Dickey*, our courts have developed a three-prong test, setting forth the criteria for denying benefits to a worker injured as a result of disobeying an employer's order: (1) the injury was, in fact, caused by the violation of the order or rule; (2) the employee actually knew of the order or rule; and (3) the order or rule implicated an activity not connected with the employee's work duties. *Nevin Trucking v. Workmen's Comp. Appeal Bd. (Murdock)*, 667 A.2d 262, 268 (Pa. Cmwlth.1995). Indeed, as to the third prong, the claimant must have been involved in an activity at the time of his injury so disconnected with his regular work duties as to be considered, with respect to the employer, nothing more than a "stranger" or "trespasser." *Camino*, 796 A.2d at 418.