**ACE WIRE SPRING AND FORM COMPANY, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (WALSHE-SKY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 14, 2014.

Decided June 10, 2014.

Robert P. Walter, Pittsburgh, for petitioner.

Michael S. Russell, Pittsburgh, for respondent Samuel Walshesky.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

Ace Wire Spring and Form Company (Employer) petitions this Court for review of the Workers' Compensation Appeal Board's (Board) September 30, 2013 order affirming the Workers' Compensation Judge's (WCJ) grant of Samuel Walshesky's (Claimant) claim petition. The issues for this Court's review are: (1) whether the Board erred by affirming the WCJ's determination that Claimant was in the course and scope of his employment at the time of his injury, and (2) whether the WCJ issued a reasoned decision. Upon review, we affirm.

Employer is a custom spring manufacturer. Claimant worked full-time for Employer as a press operator. It is undisputed that on December 4, 2007, after Claimant arrived at Employer's premises to begin his 8:00 a.m. shift, he slipped and fell on ice in the parking lot and hit his head.[1] He was taken to the hospital and was never able to return to work for Employer.

On May 8, 2009, Claimant filed a claim petition seeking full workers' compensation benefits for a "head injury which caused a left-sided stroke from his shoulder to his foot." Reproduced Record (R.R.) at 3a. Employer denied Claimant's claim petition, *inter alia*, because Claimant may not have been in the course and scope of his employment when the injury occurred. Hearings were held before a WCJ on June 16 and October 13, 2009, April 8, December 14, and December 28, 2010, and January 18, February 17 and February 23, 2011. On May 9, 2011, the WCJ granted Claimant's claim petition effective December 4, 2007, concluding that Claimant's "injury arose in the course of his employment and . . . was medically related thereto." WCJ Dec. at 10. Employer appealed to the Board. On September 30, 2013, the Board affirmed the WCJ's decision. Employer appealed from the Board's order to this Court.[2]

---

1. Claimant's original claim petition specified his injury date as December 5, 2007. He later amended the claim petition correcting the injury date to December 4, 2007. *See* Reproduced Record at 17a.

2. "Our review is limited to determining whether an error of law was committed,

■ Employer argues that the Board erred in affirming the WCJ's finding that Claimant was in the course and scope of his employment or furthering Employer's interests or affairs "when he arrived at Employer's facility an unreasonable time prior to his scheduled work shift." [3] Employer Br. at 17. We disagree.

■ "[I]n a claim proceeding, the employee bears the burden of establishing a right to compensation and of proving all necessary elements to support an award." *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy),* 535 Pa. 135, 634 A.2d 592, 595 (1993). Section 301(c)(1) of the Workers' Compensation Act (Act) [4] provides that a compensable injury under the Act must have occurred within the course of the Claimant's employment, and must be causally related thereto. *U.S. Airways v. Workers' Comp. Appeal Bd. (Dixon),* 764 A.2d 635 (Pa.Cmwlth.2000).

> An injury may be sustained 'in the course of employment' under Section 301(c)(1) of the Act in **two distinct situations:** (1) where the employee is injured on or off the employer's premises, while actually engaged in furtherance of the employer's business or affairs; **or** (2) where the employee, although not actually engaged in the furtherance of the employer's business or affairs, (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on, (b) is required by the nature of his employment to be present on the employer's premises, and (c) sustains injuries caused by the condition of

the premises or by operation of the employer's business or affairs thereon.

*Id.* at 640 (emphasis added); *see also Workmen's Comp. Appeal Bd. v. U.S. Steel Corp.,* 31 Pa.Cmwlth. 329, 376 A.2d 271 (1977)(*Slaugenhaupt*). Thus, if an employee is "actually engaged in furtherance of the employer's business or affairs" when he is injured on an employer's premises, the injury was sustained in the course of his employment. *U.S. Airways,* 764 A.2d at 640.

> The operative phrase 'actually engaged in the furtherance of the business or affairs of the employer,' ... must be given a liberal construction.... **[D]etermining whether an employee is acting in the course of employment at the time of an injury is a question of law, which must be based on the findings of fact made by the WCJ.**

*Lewis v. Workers' Comp. Appeal Bd. (Andy Frain Servs., Inc.),* 29 A.3d 851, 862 (Pa.Cmwlth.2011) (citation omitted; emphasis added).

In the case at bar, the WCJ accepted Claimant's and Employer's witnesses' deposition transcripts into evidence. During Claimant's August 25, 2009 deposition, he testified that on December 4, 2007 he parked in Employer's parking lot at approximately 6:30 a.m. Claimant went into Employer's building, picked up his clean uniforms and took them back out to his car, "because normally [he] would forget them if [he] didn't take them out." R.R. at 20a. He explained that as he returned to the building he slipped on ice and struck

---

whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated." *Williams v. Workers' Comp. Appeal Bd. (POHL Transp.),* 4 A.3d 742, 744 n. 1 (Pa.Cmwlth.2010).

**3.** Employer admits "[t]here is no question that [Claimant's] injury occurred on Employ-

er's premises. [Employer] does not dispute that its parking lot was provided for employees and constitutes its premises." Employer Br. at 17.

**4.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1).

the right side of his head, causing it to bleed. He went into Employer's building, and reported the incident to Employer's general manager Richard "Richey" Froehlich (Froehlich).[5] Claimant stated, at Froehlich's insistence, he went into the bathroom to wash the blood off and, while in the bathroom he believes he passed out, because the next thing he recalled was waking up in a nursing home paralyzed on his left side.[6]

Claimant acknowledged that his shift did not begin until 8:00 a.m. on the date of his accident, "but [he] got there early . . . . [b]ecause of traffic." R.R. at 22a. Although he lives only five miles from work, he left early "to avoid traffic in downtown Pittsburgh." R.R. at 37a. He maintained that if he left his house later to get to work, "[he'd] have got to work late" and his pay would have been docked, so he always got to work early. R.R. at 22a; *see also* R.R. at 34a. Claimant maintained that after putting his uniforms in the car, he intended to return to Employer's building and have coffee in the break room until his shift began at 8:00 a.m.

Employer offered Froehlich's January 27, 2011 deposition testimony which the WCJ admitted into evidence. Froehlich oversees Employer's day-to-day operations. He described that Employer's office is located in the front of the building, and the manufacturing plant is located in the back portion of the building. An alarm system controls each building section separately.[7] Two doors provide access be-tween the two portions of the building from the inside, which are unlocked daily from the office side. Manufacturing employees park to the rear of the building. Office employees park in front of the building, which is where Froehlich typically parks.

Froehlich explained that Employer's inventory manager Donald Ellick (Ellick), Dick Macheeka, and the foremen have keys to the building. Once the rear door is unlocked, the electronic alarm must be disarmed with each key holder's individual alarm passcode. Claimant had neither a building key nor a passcode. Froehlich also described that Employer provided an optional uniform cleaning service through UniFirst in December 2007. UniFirst dropped off clean uniforms and picked up dirty ones in the manufacturing lunchroom on Mondays between 10:00 a.m. and noon. On Monday, December 3, 2007, a day on which Claimant worked, UniFirst delivered clean uniforms.

Froehlich testified that on December 4, 2007, a Tuesday morning, he arrived at work at approximately 6:30 a.m., parked in the front lot and entered Employer's facility through the front door. As was his routine, Froehlich turned the lights on, hung up his coat, turned his computer on, started the coffee, unlocked the doors be-tween the office and the plant,[8] and then checked the fax machine for orders. While he was at the fax machine, Claimant entered the office through the kitchen door entrance holding his head and told Froeh-

---

**5.** Employer is a family business owned by Froehlich's parents.

**6.** Claimant described that while he regained some movement in his left leg after approximately six months of therapy, he has never regained use of his left hand or arm, and he has been informed that his condition will not improve. R.R. at 23a–25a. Claimant has a 2–inch scar from the accident, and he uses a wheelchair because he is only able to walk "[a] little bit with a cane." R.R. at 35a; *see also* R.R. at 24a–25a, 28a.

**7.** Only Froehlich and his parents have the passcodes for both sections.

**8.** Froehlich did not unlock the manufacturing entrance door or disable that alarm as part of his routine.

lich that he had fallen. Froehlich observed that Claimant had dried blood through the back of his head and all over his hand. Froehlich asked Claimant where he fell, but Claimant could not remember. He told Claimant that he will have to go to the hospital, but Claimant asked to wait until plant manager/foreman William Margo (Margo) arrived. Froehlich encouraged Claimant to wait in the office kitchen, but Claimant preferred to sit in the manufacturing lunchroom. Froehlich contends that he did not tell Claimant to clean up, and Claimant did not go into the bathroom while Froehlich was with him. He remained with Claimant until Margo took him to the hospital. Froehlich recalled that Claimant was lucid and did not have any difficulty walking or talking at that time. He contended that Claimant's accident could not have occurred as Claimant described because Claimant did not have a key or passcode in order to access the building on December 4, 2007. Employer had not checked whose passcode was used to open the plant portion of Employer's premises on December 4, 2007. Although Froehlich claimed that there were no uniforms left at Employer's premises on December 4, 2007, he admitted that he did not look, and then he acknowledged that Employer's January 2008 invoices reflected that UniFirst could not account for one week's worth of Claimant's uniforms.[9]

Ellick testified at his January 27, 2011 deposition that he was scheduled to begin work at 7:00 a.m. on December 4, 2007. He typically arrived early for work and did so that day. He stated that when he arrived at approximately 6:30 a.m., he and Claimant were the only employees at the premises. Ellick described Claimant sitting in the passenger side of his car with the door open holding his head. As Ellick sat in his car listening to the news, Claimant approached Ellick and told him he fell. Ellick observed dried blood on Claimant's hand and neck. Ellick walked Claimant into the building. Ellick explained that Claimant headed to the lunchroom, and he went to the bench area where he sits, drinks coffee and listens to the radio. He did not see Claimant thereafter. Ellick admitted that Claimant could have gone from the lunchroom to the front section of the building, gotten his uniforms and gone back to his car.

Ellick stated that only he, the foremen and probably management have keys to Employer's building. Ellick described that since he had to unlock Employer's building and disarm the alarm when he took Claimant in on December 4th, he did not think Claimant could have gotten in the building earlier to get his uniforms. He did not discuss the circumstances of Claimant's accident with Claimant, and he did not notice if Claimant had uniforms in his car.

At Claimant's February 7, 2011 deposition, he changed his prior testimony, stating that he arrived at Employer's premises at approximately 7:30 a.m., rather than 6:30 a.m. When he arrived at Employer's premises on December 4, 2007, there were only about four cars in the parking lot, one of which he recalled belonged to co-worker Richard Larkin (Larkin). Claimant did not recall seeing Ellick at all that morning. Claimant recounted that the door to Employer's building was unlocked when he arrived, he retrieved his uniforms and returned to his car. After his fall, he went back into the building through the same unlocked door and found Employer's owner Richard Froehlich (Mr. Froehlich), Froehlich's father, standing in the back reading orders. Mr. Froehlich suggested

9. Claimant's uniforms were eventually re-    turned to Employer by Claimant's friend.

that he wash the blood off. Claimant recalled going into the bathroom. Claimant explained that everything after that is a blank until he woke up in the nursing home. Claimant does not recall either seeing or speaking to Froehlich, Ellick or Margo that morning, or being taken to the hospital. However, he believed he punched his time card that morning.

At Froehlich's February 16, 2011 deposition, he testified that Claimant's regular work schedule was 8:00 a.m. to 4:30 p.m. daily. Claimant's time card for Monday, December 3, 2007 reflected that he worked from 6:56 a.m. until 4:31 p.m. *See* R.R. at 201a. Froehlich stated that Claimant did not clock in on Tuesday, December 4, 2007. Ellick's time card reflected that he punched in at 6:37 a.m. that day. *See* R.R. at 202a. Larkin's time card demonstrated that Larkin punched in at 7:47 a.m. that day. *See* R.R. at 203a. Based upon this information, Froehlich deducted that Ellick was the first one at the plant with a key to the manufacturing facility door on the day of Claimant's accident.

Mr. Froehlich, Employer's owner, was deposed on February 16, 2011. He testified that he arrived at work on December 4, 2007 at approximately 8:30 a.m. as was his practice for the past 20 to 25 years. Mr. Froehlich stated that he did not have any conversations with Claimant that day.

Larkin testified at his February 16, 2011 deposition that his normal work schedule as a laborer for Employer in December 2007 was 8:00 a.m. to 4:30 p.m. He stated that since he did not punch in until 7:47 a.m. on December 4, 2007, his vehicle could not have been parked in Employer's lot when Claimant claims to have seen it at 7:30 a.m. He also described that, for years, he parked to the side of Employer's building approximately one spot from Claimant,

but when he bought his SUV before December 2007, he began parking behind the building, so his vehicle could not have been the one Claimant described seeing on December 4, 2007.

Margo was also deposed on February 16, 2011. He testified that Employer's winter manufacturing hours were 8:00 a.m. to 4:30 p.m.[10] Margo explained that he does not punch a clock, but generally arrived at work between 6:40 and 6:50 a.m. When he arrived at work on December 4, 2007, Claimant was sitting in the lunchroom. He observed that Claimant had dried blood on the back of his head. He spoke to Claimant and then drove him to the hospital which was approximately 5 minutes away. He recalled that Claimant was lucid and able to walk under his own power. He offered to stay at the hospital with Claimant, but Claimant declined the offer. According to Claimant's records, his emergency department triage assessment took place at 7:41 a.m. *See* R.R. at 204a.

■ It is well established that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n. 8 (Pa.Cmwlth.2011). "The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness...." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa.Cmwlth.2000).

Based upon the record evidence in this case, the WCJ specifically found, in relevant part:

22. This [WCJ] finds that [Claimant's] testimony ... was more credible and convincing than the testimony of [Employer's] witnesses ... to the extent of any inconsistencies. However, this

---

10. Employer's summer hours were 7:00 a.m.    to 3:30 p.m.

[WCJ] further notes that some of [C]laimant's memory may be faulty due to his fall on December 4, 2007 and his subsequent complications.

. . . .

25. This [WCJ] further finds that [Claimant's] regular work shift was scheduled to start on December 4, 2007 at 8:00 a[.]m. [Claimant] **arrived early at work and he parked in the employee parking lot** next to [Employer's] building between 6:30 a[.]m[.] and 7:30 a[.]m[.] to first **pick up his uniforms and then go to work.** He fell onto [Employer's] parking lot, and he injured his head which subsequently started bleeding. He was taken to the Ohio Valley Hospital by another employee . . . due to his head injury, and [Employer] was given due and timely notice of his injury.

WCJ Dec. at 8–9 (emphasis added). Accordingly, the WCJ concluded, in pertinent

1. [Claimant] sustained his burden of proof on the Claim Petition that he sustained an injury on the morning of December 4, 2007 as a result of a fall in his [E]mployer's parking lot. He struck his head and that led to complications. **The injury arose in the course of his employment** and it was medically related thereto. **[Claimant] was also furthering the business affairs of his [E]mployer when he was injured.**

WCJ Dec. at 9 (emphasis added).

■ "The Board may review the nature of the evidence submitted to determine if it is sufficient to state a claim, however reinterpretation of the evidence by the Board is in excess of its scope of review." *Bartholetti v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 927 A.2d 743, 747 (Pa.Cmwlth.2007). Here, the Board reviewed the record evidence and found no reversible error on the WCJ's part, stating:

Although employees were not required to wear uniforms, [Employer] made available for its employees a service that provides uniforms, which were optional. Uniforms were delivered on Monday afternoons, when they would provide a week's worth of uniforms for those employees who opted in, and pick up the previous week['s] worth of dirty uniforms. Claimant chose to take advantage of the service provided by [Employer]. He credibly testified that he arrived at work early on December [4], 2007, and went inside the building in order to get his uniforms. **He returned the uniforms to his car and then fell when on his way back into the building to begin his work day.** Under these circumstances, we determine that Claimant was engaged in the furtherance of [Employer's] business or affairs when he was injured.[FN]1

[FN]1. [Employer] argues that it was unreasonable for Claimant to be at work 90 minutes before his scheduled work time of 8:00 a.m. However, **we need not address the reasonableness of Claimant's arrival time** under *Slaugenhaupt* because we agree with the WCJ that Claimant was engaged in the furtherance of [Employer's] business or affairs when he was injured.

Board Op. at 7 (emphasis added).

■ "[I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa.Cmwlth.2007) (quoting *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa.Cmwlth. 2005)). "We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings. If the record contains

such evidence, the findings must be upheld even though the record contains conflicting evidence." *Lahr Mech.*, 933 A.2d at 1101 (citation omitted). Moreover, this Court has held:

> Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder. Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.

*Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa.Cmwlth.2003) (citations omitted).

It is undisputed that Claimant habitually left his home early for work in order to avoid traffic that would otherwise cause him to be late. The exact time of Claimant's arrival at work on December 4, 2007 was not pinpointed. Employer's witnesses' testimony confirmed that it was common for employees to arrive at work early. Froehlich testified that he usually arrived at the front office at approximately 6:30 a.m. He reported that on the day of Claimant's accident he opened the office, and he had conducted his entire morning routine before he saw Claimant. Similarly, Ellick testified that he typically arrived in Employer's parking lot at approximately 6:30 a.m. On December 4, 2007, Ellick arrived early and remained in his car and was listening to the news when Claimant approached him. Margo explained that he regularly arrived at work between 6:40 and 6:50 a.m. even though the winter manufacturing hours started at 8:00 a.m. Upon Margo's arrival on the day of Claimant's accident, he drove Claimant to the nearby hospital where Claimant was triaged at 7:41 a.m. Although Claimant's memory may have been faulty due to complications from his injury as the WCJ found, his timecard confirmed that he too typically arrived at work early—at 6:56 a.m. the day before his injury. Thus, there was substantial record evidence to support the WCJ's finding that Claimant's arrival at work on the day of his injury was somewhere between 6:30 a.m. and 7:30 a.m.

The WCJ deemed credible Claimant's testimony that he intended to retrieve his work uniforms and return them to his car so that he would not forget them when his shift ended that day. As Claimant returned to Employer's building, he was injured, he notified Employer, he was transported to the hospital and, as a result of his injury, was totally disabled.

▄▄▄ Whether an employee is acting within the course of his employment is a legal determination to be made based upon the WCJ's findings of fact. *Lewis.* In *Penn State University v. Workers' Compensation Appeal Board (Smith)*, 15 A.3d 949 (Pa.Cmwlth.2011), this Court listed factors considered "when determining whether an employee is furthering an employer's business or affairs when injured while engaging in a ... personal activity during ... non-work hours." *Id.* at 953.

> First, in concluding that an employee was engaged in the furtherance of the business or affairs of the employer, much emphasis is placed on evidence demonstrating that the employer encouraged the activity at issue.... Second, emphasis is also placed on a finding that the activity the claimant was engaged in **furthered a specific interest of the employer**.... Finally, this Court has considered whether the activity was necessary to maintain a claimant's employment skills.

*Id.* at 953–54 (emphasis added). This Court has also held that "once an employ-

ee is on the Employer's premises, **actually getting to or leaving the employee's work station is a necessary part of that employee's employment, and thus, definitively furthering the employer's interests.**" *Allegheny Ludlum Corp. v. Workers' Comp. Appeal Bd. (Hines)*, 913 A.2d 345, 349 (Pa.Cmwlth.2006) (emphasis added) (quoting *Motion Control Indus. v. Workmen's Comp. Appeal Bd. (Buck)*, 145 Pa.Cmwlth. 399, 603 A.2d 675, 678 (1992)). Thus, "[e]ven though not actually engaged in employer's work, an employee will be considered to have suffered an injury 'in the course of employment' if the injury occurred on the employer's 'premises' **at a reasonable time before** or after **the work period.**" *Allegheny Ludlum Corp.*, 913 A.2d at 349 (emphasis added) (quoting *Newhouse v. Workmen's Comp. Appeal Bd. (Harris Cleaning Serv., Inc.)*, 109 Pa. Cmwlth. 96, 530 A.2d 545, 547 (1987)). "[A]n [e]mployer's 'premises' includes a reasonable means of access to the situs of the Employer's business, including employee parking lots." *Motion Control Indus.*, 603 A.2d at 678.

Since there is no question in this case that Claimant's injury occurred on Employer's premises as he was headed into work on December 4, 2007, we must determine whether Claimant was on Employer's premises at a reasonable time before his work day began. Pennsylvania courts have held that "15 to 30 minutes prior to the time a claimant is to begin work is a 'reasonable time' and, therefore, during that time the claimant is considered to be advancing the employer's business." *Allegheny Ludlum Corp.*, 913 A.2d at 349; *see also Thomas Jefferson Univ. Hosp. v. Workers' Comp. Appeal Bd. (Cattalo)*, 144 Pa.Cmwlth. 302, 601 A.2d 476 (1991); *Fashion Hosiery Shops v. Workmen's Comp. Appeal Bd. (Kurta)*, 55 Pa.Cmwlth. 465, 423 A.2d 792 (1980); *Michrina v. Fetzer*, 8 Pa.Cmwlth. 273, 301 A.2d 924

(1973); *Kulik v. Mash*, 982 A.2d 85 (Pa.Super.2009).

There is no bright-line test for assessing how long before commencement of the scheduled work day is a reasonable time for an employee to be furthering his employer's interests. In support of its position that 90 minutes is unreasonable, Employer cited *Pypers v. Workmen's Compensation Appeal Board (Baker)*, 105 Pa.Cmwlth. 448, 524 A.2d 1046 (1987), in which this Court held that the injuries the employee sustained in the employer's parking lot approximately 60 minutes after her shift ended were not within the course of her employment and, therefore, were not compensable. Yet, in *Port Authority of Allegheny County v. Workmen's Compensation Appeal Board*, 66 Pa.Cmwlth. 393, 444 A.2d 837 (1982), this Court held that the employee's death in the employer's parking lot 90 minutes after the end of his shift was compensable because "[h]is presence on the employer's premises for this additional period of time was neither unreasonable nor unusual under the conditions." *Id.* at 838–39.

In analyzing the myriad of cases on this subject, it appears that the exact *amount* of time does not appear to be as important as the claimant's *purpose or activities* during that time. In not awarding the workers' compensation benefits, the *Pypers* Court reasoned:

> [The employee] had completed her duties as a kitchen aide, the position for which she was hired, and then e[m]barked on a course of social recreation separate and distinct from the duties of her employment. Having finished her work, she was no longer required by the nature of her employment to be present in Employer's establishment, and, in her recreational capacity, she assumed the same status as the other patrons. Therefore, when Claim-

ant terminated her duties and began socializing with customers in the restaurant as an ordinary patron, she ceased to be within the course of her employment for purposes of workmen's compensation.

*Id.* at 1049. In awarding benefits in *Port Authority,* the Court held that, although the employee's heart attack caused by shoveling snow from his car was performed on the employer's premises after hours and was not related to the employee's actual job for his employer, the activity was related to employer's operation and, therefore, his death was related to his employment. *Id.*

In *Wolsko v. American Bridge Co.,* 158 Pa.Super. 339, 44 A.2d 873 (1945), the Pennsylvania Superior Court similarly deemed compensable the death of an employee who arrived for work 75 minutes early. The decedent employee arrived at 3:45 p.m. at the employer's office to obtain his badge before his 5:00 p.m. shipyard shift began. He was seen between 4:30 p.m. and 5:00 p.m. on the deck of a ship different from the one he was scheduled to work on that day. It was determined that at some point before the employee was to begin his shift, he fell to his death. The *Wolsko* Court noted that "[i]t was permissible for an employee to enter defendant's shipyard about 3 p.m. even though his work did not begin until 5 p.m. The men were usually on the premises one-half to three-quarters of an hour before the hour fixed to begin work." *Id.* at 874 (emphasis added). The *Wolsko* Court concluded:

> [The decedent] had entered the premises of defendant-the shipyard-where his presence was required. **He was not on the premises an unreasonable length of time prior to the beginning of his day's task.** Neither the purpose nor the motive for his presence on landing

ship tank No. 286 was established. But there might be several proper and natural reasons for his being in the southways of the shipyard. **There is no[t] sufficient testimony to show that he had abandoned his employment, or that he was engaged in something entirely foreign thereto, or that he acted contrary to any positive orders of his employer, or that he was a trespasser.**

*Id.* at 877 (citations omitted; emphasis added).

In this case, there is no record evidence establishing the exact time of Claimant's arrival to work on the day of his accident. Based on all of the testimony, as we concluded above, the WCJ's finding that Claimant arrived at work somewhere between 6:30 and 7:30 a.m. is supported by substantial evidence. Once the Claimant met his burden of showing that his injury occurred within the course and scope of his employment, Employer had the burden to prove otherwise. Contrary to Employer's assertion, it did not conclusively establish that Claimant arrived to work 90 minutes before the start of his shift and the WCJ did not so find. Rather, the WCJ found that the evidence placed Claimant's arrival at Employer's premises somewhere between 30 and 90 minutes before his work shift. Because this Court must uphold findings of fact supported by substantial evidence, examine the testimony in the light most favorable to the prevailing party below and liberally construe a remedial statute like the Act, this Court concludes that the evidence did not establish that Claimant arrived at Employer's premises on December 4, 2007 an unreasonable amount of time before his shift began.

There was no credible evidence "to show that [Claimant] had abandoned his employment, or that he was engaged in something entirely foreign thereto, or that he acted contrary to any positive orders of his em-

ployer, or that he was a trespasser" within the time leading up to his shift. *Wolsko,* 44 A.2d at 877. Claimant collected his uniforms which were provided and cleaned as an Employer-provided benefit, and he put them in his car. We hold that the Board did not err by affirming the WCJ's determination that Claimant's December 4, 2007 injury occurred while he was in furtherance of Employer's interests and, therefore, he was in the course and scope of his employment.

■■ Employer next argues that the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Act, 77 P.S. § 834. Specifically, Employer argues that the WCJ offered no reasons for finding that Claimant arrived at work between 6:30 a.m. and 7:30 a.m., and could not have done so since "all of the evidence of record supports a finding that the Claimant arrived at 6:30 a.m." Employer Br. at 26. We disagree. Section 422(a) of the Act provides, in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence.

77 P.S. § 834. This Court has stated:

> To constitute a reasoned decision within the meaning of Section 422(a) [of the Act], a WCJ's decision must permit adequate appellate review.... '[S]ome ar-

ticulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review.'

*Green v. Workers' Comp. Appeal Bd. (U.S. Airways),* 28 A.3d 936, 940 (Pa.Cmwlth. 2011) (quoting *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.),* 893 A.2d 191, 194–95 (Pa.Cmwlth.2006) (quoting *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.),* 574 Pa. 61, 828 A.2d 1043, 1053 (2003)) (citations and footnote omitted).

Here, the WCJ gave a detailed explanation of the evidence presented, as well as the reasons for his credibility determinations. Regarding Claimant's testimony, the WCJ specifically summarized that Claimant "always arrived at work early, and he was at work [at] approximately 6:30 a[.]m[.] on the morning of his injury." Finding of Fact (FOF) 5(d). However, the WCJ also acknowledged Claimant's later testimony that "he recollected arriving [at] approximately 7:30 a[.]m." FOF 8(e). The WCJ expressly deemed Claimant's testimony "more credible and convincing" than Employer's witness testimony "to the extent of any inconsistencies." WCJ Dec. at 8. Finally, the WCJ acknowledged that "some of the [C]laimant's memory may be faulty" due to his injuries and the complications that arose therefrom. FOF 22. Based on these findings, the WCJ specifically concluded that Claimant indeed "arrived early at work ... between 6:30 a[.]m[.] and 7:30 a[.]m[.]". WCJ Dec. at 8.

■■ The reasoned decision requirement in "Section 422(a) [of the Act] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Dor-*

*sey,* 893 A.2d at 195 (citation omitted). "A capricious disregard of evidence occurs only when the fact-finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.–Fairless Works),* 862 A.2d 137, 145 (Pa.Cmwlth.2004). Capricious disregard, by definition, does not exist where, as here, the WCJ expressly considers and rejects the evidence. *Williams.* "[T]he fact that a WCJ may not reiterate and/or pass specific review upon any particular line or portion of testimony does not necessarily constitute a capricious disregard thereof." *Id.* at 145–46. "The reasoned decision requirement is simply that the WCJ must articulate some objective reasoning to facilitate appellate review of the same." *Green,* 28 A.3d at 940. The WCJ's decision which includes lengthy summations of the respective witnesses' testimony clearly reveals that the WCJ considered the full testimony of all the witnesses and he set forth the reasons for his conclusions. Accordingly, the WCJ issued a reasoned decision.

Based on the foregoing, the Board's order is affirmed.

Judge McGINLEY did not participate in the decision in this case.

### *ORDER*

AND NOW, this 10th day of June, 2014, the Workers' Compensation Appeal Board's September 30, 2013 order is affirmed.