# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

US Airways, Inc. and                      :
AIG Claims, Inc.,                         :
                    Petitioners           :
                                          :
          v.                              :    No. 1984 C.D. 2016
                                          :    Submitted: April 7, 2017
Workers' Compensation Appeal              :
Board (Beckley),                          :
                    Respondent            :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                      **FILED:  August 25, 2017**


US Airways, Inc. (US Airways) and AIG Claims, Inc. (collectively, Petitioners) petition for review of an order of the Workers' Compensation Appeal Board (Board).  The Board affirmed the decision of a workers' compensation judge (WCJ), which addressed four petitions.  The WCJ granted one petition—Lisa Beckley's (Claimant) petition to reinstate benefits—and denied three petitions—Claimant's review petition, Claimant's claim petition, and US Airways' termination petition.  For the reasons set forth below, we now vacate and remand.

Claimant, a pilot for US Airways,[1] suffered an injury while in the course and scope of her employment when she slipped and fell on ice on

---

[1] While US Airways is a captioned petitioner and has been identified as Claimant's employer for purposes of appeal, the certified record identifies additional parties as **(Footnote continued on next page…)**

December 21, 2009. On December 31, 2009, US Airways issued a notice of temporary compensation payable by which it agreed to pay for Claimant's medical treatment for her alleged work injuries, identified as a buttock contusion and cervical, right shoulder, and left hip strains. On April 2, 2010, the parties entered into an agreement for compensation. Claimant remained off work for four months until returning to her pilot position on April 12, 2010. US Airways issued a notification of suspension of workers' compensation benefits as a result of Claimant returning to her full-time, pre-injury position.

Three years later, on April 4, 2013, Claimant left her position with US Airways. On July 30, 2014, she filed a petition to reinstate compensation benefits as of April 4, 2013, alleging that her condition worsened. Also on July 30, 2014, Claimant filed a review petition, seeking to amend the description of the December 21, 2009 injury to include thoracic/lumbar neuritis/radiculopathy, pain in joint pelvis/thigh, pain in limb, and brachial neuritis/radiculitis (back pain radiating down Claimant's leg). On October 16, 2014, Claimant also filed a claim petition, alleging that she sustained new injuries to her left hand, wrist, and fingers after a fall in September 2014, and that her fall was a result of the December 21, 2009 injury. US Airways filed a petition to terminate compensation

---

**(continued…)**

defendants/employers at various stages of litigation. The notice of temporary compensation payable, agreement for compensation, and notification of suspension identified as employer US Airways and Pittsburgh International Airport. Claimant's petitions, US Airways' termination petition, and the WCJ's decision listed US Airways and Piedmont Airlines, Incorporated as employer/defendant, while the Board's decision identified only Piedmont Airlines, Inc. as defendant.

2

benefits, alleging that Claimant fully recovered from her December 21, 2009 injury and was able to work without restriction.

Claimant testified on her own behalf, by way of deposition and live testimony in front of the WCJ. Claimant testified that despite returning to her pre-injury job, she felt she had to voluntarily take her retirement because her December 21, 2009 injury continued to affect her. Claimant testified that when she returned to work, she initially flew the same plane and trips that she flew before her injury. The lengths of those trips, however, were bothersome to Claimant, because prolonged sitting was painful in her buttock area. She explained that she has "terrible burning pain, throbbing pain that goes down [her] leg and then [her] leg goes numb." (Reproduced Record (R.R.) at 48a.) As such, Claimant switched to fly shorter trips, though she still worked long hours and continued to be in pain from prolonged sitting. She then decided to try to work as a reserve pilot, and though working as a reserve pilot entailed less sitting, she was only able to manage the amount of time sitting with "the aid of a lot of Advil." (R.R. at 49a.) Claimant testified that she still experienced pain with the sitting component to the reserve pilot position, even with Advil, and she felt that she had to leave the position due to the "chronic pain." (R.R. at 91a.) She testified that she did not want to go on disability because she would lose her pilot's license, and she hoped to return to work for an airline at some point.

Regarding her treatment, Claimant testified that she received diagnostic testing from "work doctors," who recommended a treatment procedure and then physical therapy. (R.R. at 87a.) She went to physical therapy for her shoulder and began treating with a chiropractor, John McCarrin, D.C. Claimant testified that prior to her treatment with Dr. McCarrin her pain levels were at

3

a 9 or 10 out of 10. Even with treatment, her pain levels only lessened to a 5 out of 10 when she returned to work in April 2010. She testified that her pain fluctuated after returning to work, but it remained around a 5 out of 10. Claimant testified that she received chiropractic treatment from Dr. McCarrin consistently since her December 21, 2009 injury.

Claimant also provided testimony regarding an automobile collision and a second slip and fall that occurred after her December 21, 2009 injury, both for which she received treatment. While driving in her neighborhood in April 2012, Claimant was struck by another vehicle when she turned left without noticing the vehicle that struck her. Claimant testified that the collision resulted in temporary soreness in her neck and her knees. Claimant testified that she failed to mention this collision to Petitioners' doctor because "it wasn't a big deal," and she forgot about the collision. (R.R. at 56a.) Claimant also testified that on September 21, 2014, she fell on a train track and her left hand "clipped between the rails," resulting in an open hand fracture. (R.R. at 103a-104a.) She went to the emergency room at Crozer Chester Medical Center, where Dr. Thomas Jacobs performed surgery on her hand. She described that her left leg went numb and "gave out on her," she could not recover her balance, and she fell. (R.R. at 103a.) Claimant testified that she never experienced this type of problem prior to her December 21, 2009 injury.

Relating to employment, Claimant testified that she struggled to find any work after she left her position with US Airways in April 2013. Claimant testified that she searched for teaching positions at pilot schools as an alternative to being an actual pilot. She testified that for a six-month period she lived in Australia, where she attempted to start a business with her daughter, though they

4

were unsuccessful. While she had not found a job at the time of her deposition, Claimant did find a job two weeks prior to testifying before the WCJ. The position entailed flying between Honolulu and Maui. She testified that the flights were around twenty minutes long and allowed for less sitting than her previous positions as a pilot. Claimant testified that she began taking Advil again but that she had not had any problems during her first two weeks.

Dr. McCarrin also testified on behalf of Claimant. He testified that he began treating Claimant on December 22, 2009, the day after her initial injury. Dr. McCarrin diagnosed Claimant with "lumbar radiculitis with leg pain, cervical radiculitis and arm pain, and pelvic pain." (R.R. at 164a.) He testified that he treated Claimant two or three times a week since her December 21, 2009 injury, depending on her schedule as a pilot. Dr. McCarrin opined that Claimant's condition worsened as a result of her position as a pilot for US Airways. More specifically, Dr. McCarrin testified: "I feel at this time she's unable to sit for long periods of time without aggravating the condition as she's mentioned at several different re-exams." (R.R. at 180a.) He testified that he treated Claimant primarily for low back and leg pain since her December 21, 2009 injury. He also testified that he believed Claimant's September 21, 2014 fall was a result of the continuation of her symptoms from the December 21, 2009 fall.

US Airways presented the testimony of Neil Kahanovitz, M.D., an orthopedic surgeon. He testified that he conducted an independent medical examination of Claimant on August 29, 2014. He testified that "[t]here did not appear to be any objective findings or abnormalities. She had some very mild subjective pain complaints, but otherwise it was objectively normal." (R.R. at 299a.) Dr. Kahanovitz opined that Claimant had fully recovered from her

5

December 21, 2009 injury and that she needed no further treatment. Dr. Kahanovitz also testified that Claimant's September 21, 2014 fall had "absolutely no relationship whatsoever to her prior injury." (R.R. at 311a.)

US Airways also presented the testimony of Andrew Sattel, M.D., also an orthopedic surgeon, regarding Claimant's upper extremities and neck. Dr. Sattel testified that he conducted an independent medical examination of Claimant on January 7, 2015. Relating to the years of chiropractic treatment, Dr. Sattel testified:

> [I]n my opinion when somebody's been seeing a chiropractor for not one month, two months, three months, but four years, five years . . . be it an orthopedic doctor, a chiropractic doctor, whatever, unless there's something objective going on, I just kind of question the efficacy of that type of treatment.

(R.R. at 239a.) He noted that while Claimant told him she tripped and fell on September 21, 2014, her emergency room records indicated that she reported tripping over her shoe while running across railroad tracks. (R.R. at 232a-33a.) Dr. Sattel testified that he was not able to attribute the September 21, 2014 fall and injury to the original December 21, 2009 fall and injury. Dr. Sattel testified that Claimant did not require any additional treatment for the injuries to her upper extremities and neck.

On November 10, 2015, the WCJ rendered a decision granting Claimant's petition to reinstate benefits and denying Claimant's review petition, Claimant's claim petition, and US Airways' termination petition. In so doing, the WCJ found Claimant credible as to her symptoms and her testimony that she only retired in April 2013 because her symptoms persisted. Specifically, Finding of Fact 14 provides, in pertinent part:

6

> Claimant . . . . is credible and convincing *as to the symptoms that she suffered* after December 21, 2009 into the future . . . . Claimant is credible and convincing that she continued to have neck, hip and *back pains* that would prevent her from continuing her full duty jobs with [US Airways] at the date of her retirement.

(WCJ Decision at 7 (emphasis added).) The WCJ found credible Dr. McCarrin's testimony that Claimant had not fully recovered and noted that the testimony was consistent with Dr. McCarrin's records spanning a period of over five years. The WCJ did not find Dr. McCarrin credible in his testimony that Claimant's September 21, 2014 fall related to her original December 21, 2009 fall. The WCJ found that Dr. Kahanovitz and Dr. Sattel were credible regarding their examinations of Claimant and in their assessment that the September 21, 2014 fall did not relate to the December 21, 2009 fall. The WCJ determined that Dr. Kahanovitz and Dr. Sattel were not credible in their testimony that Claimant was fully recovered.

Based on these credibility determinations, the WCJ concluded that Claimant had met her burden of proving that she was entitled to a reinstatement of benefits as of April 4, 2013. The WCJ further concluded that Claimant did not meet her burden of proof with respect to her review petition and claim petition and that US Airways had not met its burden of proof with respect to its termination petition. The WCJ also concluded that US Airways was responsible for litigation expenses and benefits under the Workers' Compensation Act (Act).[2] The WCJ added that US Airways is entitled to modify the payment of benefits for wages earned by Claimant after she left her position in April 2013.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

7

Thereafter, US Airways appealed to the Board. By order dated November 10, 2016, the Board affirmed the WCJ's decision. This appeal followed.

On appeal,[3] Petitioners argue that the Board erred in affirming the WCJ's decision to the extent that it granted Claimant's petition to reinstate benefits and denied US Airways' termination petition. First, Petitioners argue that the WCJ erred in concluding that Claimant met her burden on her petition to reinstate benefits, because the evidence established that her condition improved or fully resolved and there was no causal connection between Claimant's current condition/disability and the December 21, 2009 injury. Second, Petitioners argue that substantial evidence does not exist to support the WCJ's finding that Claimant retired from her pilot position with US Airways due to her December 21, 2009 injury given that she left the position for reasons unrelated to her injury and subsequently began a new position as a pilot. Third, Petitioners argue that the WCJ erred in denying the termination petition when the testimony of Claimant's chiropractor was equivocal and incompetent. Finally, Petitioners argue that the WCJ erred by failing to issue a reasoned decision.[4]

Consistent throughout Petitioners' brief is the theme that the WCJ's decision is unclear and contains inconsistencies. Petitioners argue that Claimant

___

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[4] On March 22, 2017, Claimant filed a Notice of Non-Participation, informing the Court that the parties executed a compromise and release agreement and Claimant had no interest in the financial or medical interests in the ongoing appeal.

8

had recovered from the injuries set forth in the agreement for compensation—buttock contusion, cervical strain, right shoulder strain, and left hip strain—and, thus, those injuries did not continue to affect Claimant's earning power. Petitioners argue further that Claimant's current complaints relate to her low back pain, which was not included in the agreement for compensation. Nevertheless, the WCJ appears to credit and rely upon Claimant's complaints of low back pain in granting Claimant's petition to reinstate benefits. At the same time, the WCJ denied Claimant's review petition, which sought to add injuries relating to low back and leg pain. Petitioners argue that these inconsistencies in the WCJ's findings and conclusions establish that the WCJ did not issue a reasoned decision.

Section 422(a) of the Act, 77 P.S. § 834, requires that a WCJ issue a reasoned decision, providing, in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

To be "reasoned," a WCJ must issue a decision that permits an appellate court to exercise adequate appellate review without further elucidation. *Ace Wire Spring*

9

*and Form Co. v. Workers' Comp. Appeal Bd. (Walshesky)*, 93 A.3d 923, 934 (Pa. Cmwlth.), *appeal denied*, 104 A.3d 6 (Pa. 2014). In order to satisfy this standard, however, a WCJ does not need to discuss every detail of the evidence in the record. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007). Rather, Section 422(a) of the Act requires WCJs to issue reasoned decisions so that this Court does not have to "imagine" the reasons why a WCJ made a particular credibility determination or how the WCJ reached a particular conclusion. *Id.* at 196.

Here, we cannot say that the WCJ adequately eliminated such guess work. The particularly problematic issue in the WCJ's decision is the internal inconsistency involving Claimant's low back. Claimant consistently complained of low back pain since the December 21, 2009 injury, which the WCJ repeatedly noted in his summary of Claimant's testimony. Moreover, in Finding of Fact 14, the WCJ specifically credited Claimant's testimony regarding her symptoms, which necessarily includes her complaints of low back pain. (R.R. at 407a.) The WCJ also found that the December 21, 2009 fall prevented Claimant from returning to her pre-injury position because she continued to have neck, hip, and *back* pain. (*Id.*) The WCJ granted Claimant's petition for reinstatement, seemingly as a result of Finding of Fact 14 and Claimant's testimony regarding her low back. The agreement for compensation, however, listed only buttock contusion, cervical strain, right shoulder strain, and left hip strain as the accepted injuries—there was no mention of back pain or a back injury. The WCJ, therefore, appears to have granted Claimant's petition to reinstate based on the continuation of an injury that the parties did not include in the agreement for compensation,

10

without also amending Claimant's injury description to include low back pain. Because we are unclear as to the rationale for the WCJ's decision to reinstate benefits, our appellate review is thwarted without further elucidation. Thus, remand is necessary so that the WCJ can clarify his decision.[5]

Accordingly, we vacate the Board's order and remand the matter to the Board with instructions that the Board remand the matter to the WCJ for the WCJ to issue a new decision.

P. KEVIN BROBSON, Judge

---

[5] Because we have concluded that the WCJ's decision precludes judicial review, we need not reach Petitioners' remaining arguments.

11

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

US Airways, Inc. and           :
AIG Claims, Inc.,           :
          Petitioners    :
          :
          v.           :   No. 1984 C.D. 2016
          :
Workers' Compensation Appeal   :
Board (Beckley),          :
          Respondent   :

## **O R D E R**

AND NOW, this 25th day of August, 2017, the order of the Workers' Compensation Appeal Board (Board) is hereby VACATED. The above-captioned matter is REMANDED to the Board with instructions that the Board remand the matter to the Workers' Compensation Judge (WCJ) for the WCJ to issue a new decision and order.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge